## MASON *v.* BOWEN.

### Opinion delivered February 14, 1916.

1. WILLS—HOLOGRAPHIC WILL—PROOF.—An instrument, to be valid as an holographic will, both the entire body of the will and the signature thereto, must be in the handwriting of the testator, and this must be established by unimpeachable evidence of at least three disinterested witnesses.

2. WILLS—HOLOGRAPHIC WILL—SUFFICIENCY OF PROOF.—A will, offered for probate, held to be valid as an holographic will.

3. WILLS—EXECUTION—SUFFICIENCY OF EVIDENCE.—The evidence held sufficient to warrant the jury in finding that an instrument offered

for probate as a will, was properly executed and the testator's signature properly attested, as required by the statute.

4. WILLS—UNDUE INFLUENCE—STATEMENTS OF TESTATOR.—The statements and declarations of a testator, whether made before or after the execution of a will, are not competent as direct or substantive evidence of undue influence, but are admissible to show the mental condition of the testator at the time of making the will.

5. APPEAL AND ERROR—CUMULATIVE EVIDENCE OF AN UNDISPUTED FACT.—It is not prejudicial error for the trial court to refuse to allow cumulative evidence of an undisputed fact.

6. WILLS—CAPACITY OF TESTATOR—ACTS AND DECLARATIONS.—Where the testator's mental condition is in issue, evidence of his acts and declarations, are admissible, when made a reasonable time before or after the execution of the instrument.

7. WILLS—INTENTION OF TESTATOR—EVIDENCE OF DECLARATIONS.—In a contest of a will, evidence of statements made by the deceased, two years before his death, as to what disposition he wished to make of his property, is inadmissible.

8. WILLS—DECLARATIONS OF TESTATOR—TIME WHEN MADE—MENTAL CAPACITY.—Declarations of a testator made prior to the execution of a will, will be entitled to probative force according to the nearness or remoteness of the time at which they are made. The admission of such declarations is much within the discretion of the trial judge; when made at a remote period, they lose their probative force, and are entitled to no value whatever as proof of the mental capacity of the testator.

9. WILLS—CONTEST—MENTAL INCAPACITY.—Where deceased removed from where he was living, and went to live with other parties, evidence of his declarations made three and a half years before his death, and before he moved, are inadmissible to show his mental incapacity at the time he executed his will.

10. WILLS—VALIDITY—FINDING OF JURY.—When the evidence is conflicting as to deceased's capacity to make a will, the verdict of a jury, upholding the will, will not be disturbed on appeal, when there is any substantial evidence to support it.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk*, Judge; affirmed.

*Bradshaw, Rhoton & Helm*, for appellants; *Gardner K. Oliphant*, of counsel.

1. The case should have been dismissed on appellants' motion upon the testimony of appellee. A will that is made in such form and manner as to require the statutory attesting witnesses, is not valid unless at the time the testator subscribed it or acknowledged it that he uncon-

ditionally, unqualifiedly and without any express mental reservation declared to and in the presence of such witnesses and in the presence of each other that it was his last will and that he did so at a time when he possessed testamentary capacity. 13 Ark. 474; *McDaniel* v. *Crosby,* 19 *Id.* 553. A holographic will must be established by the unimpeachable evidence of at least three disinterested witnesses. Kirby's Dig., § 8012; 80 Ark. 204; 12 Mich. 495.

2. The court erred in refusing to permit the witness Ben Mason to testify as to undue influence. 29 Ark. 151; 14 Enc. of Ev., p. 281; 12 Mich. 490; 10 Ark. 446. The statements made by deceased were competent and relevant. 74 Ark. 212; 5 *Id.* 70; 29 *Id.* 151; 25 *Id.* 384; Greenl. Ev., § 510; 42 Ark. 544; 87 Ark. 243.

3. It was error also to refuse to permit witness J. S. Hoffman to testify as to declarations made by deceased, prior to the execution of the will as to how he intended to dispose of his property. 29 Ark. 154; 74 *Id.* 216; 60 *Id.* 301; 180 U. S. 552, 571 and note; 1 Redfield on Wills, 557, 559; Schouler on Wills, § § 242-3; Gardner on Wills, 137; 28 N. J. L. 282. It was certainly competent to show the mental capacity of the testator. 106 Ark. 213; 13 S. W. 1098; 35 L. R. A. 102, 21 So. 41; Hughes on Ev., § 10, p. 128; 14 Enc. of Ev. 281; 115 Tenn. 73, 5 A. & E. Ann. Cas. 601; 3 L. R. A. (N. S.) 749 and note; 74 Ark. 212; 119 Ala. 641, 6 So. 459; 14 Ga. 286; 62 Minn. 482; 35 Col. 578; 6 L. R. A. (N. S.) 575; 35 N. W. 726; 157 Mass. 180; Wigmore's Select Cases on Ev., p. 677.

3. There was error in the instructions. 57 Ark. 512; 62 *Id.* 286, 312; 29 *Id.* 152; 77 *Id.* 261; 87 *Id.* 275; 119 Ala. 641; 107 Pac. 598; 77 Ark. 129; *Ib.* 201, 437; 57 *Id.* 203. The nonproduction of evidence within the power of a party, is a strong presumption that, if produced it would be against him. 1 Greenl., Ev., § 37; 32 Ark. 346, 337. The verdict is contrary to the evidence.

*Botts & O'Daniel* and *H. C. Locklar,* for appellee.

1. The will was properly admitted to probate as a statutory will. Kirby's Dig., § 8012; 13 Ark. 474, 487; 19 *Id.* 553; 31 *Id.* 180; 80 Ark. 204; 93 *Id.* 76.

2. The testator was shown to be capacitated to make the will. 87 Ark. 243.

3. The undue influence required to avoid a will must be directly connected with its execution. 49 Ark. 371; 19 *Id.* 552; 15 *Id.* 602. There is no evidence of undue influence. The burden was on the contestants. 94 Ark. 476; 103 *Id.* 203; 93 *Id.* 66; 87 *Id.* 148. The questions of testamentary capacity and of undue influence were of fact and were correctly submitted to the jury on proper instructions and there was abundant evidence to support the verdict. 107 Ark. 158; 103 *Id.* 263; 97 *Id.* 91.

4, The testimony of Ben and Mrs. Mason and Hoffman were properly excluded. 89 Ark. 483; 100 *Id.* 76; 96 *Id.* 78; 87 *Id.* 243. It was all incompetent. 60 Am. Dec. 323; 112 Ark. 507; 112 *Id.* 507.

5. The instructions, taken as a whole are correct. 49 Ark. 372; 87 *Id.* 243, 275.

HART, J. This was a contest over the will of L. W. Mason. The will was contested by the heirs of the testator on the ground of mental incapacity on the part of the testator and that the execution of the will was procured by undue influence on the part of the contestee. The probate court refused to admit the will to probate and the contestee appealed to the circuit court. There the issues were submitted to a jury and a verdict returned in favor of contestee. Thereupon the court rendered judgment establishing the will and ordering it admitted to probate. The contestants have duly prosecuted an appeal to this court.

L. W. Mason resided in Pulaski County, Arkansas, all his life and was nearly sixty years of age at the time of his death. He died of consumption and had been ill for many years suffering with that disease and with kidney trouble. He came to Little Rock in November, 1911, to reside with J. B. R. Bowen, the contestee, and lived with him until the time of his death on June 8, 1913.

(1) The will in question was executed on October 30, 1912. At the time of the execution of the will Mason owned property to the amount of $6,000 or $7,000, most of which he had inherited from his father. By the terms

of the will most of this property went to the contestee. After the will was executed the testator gave to his relatives certain specified amounts of money. For about three years prior to the time he came to Little Rock the testator resided with the widow of a deceased brother and she says she did not charge him any board. It was claimed by the contestee that the body of the will and the signature thereto were in the handwriting of the testator. The will was also attested by two witnesses as required by the statute. At the request of counsel for the contestants the court instructed the jury that to be valid as a holographic will both the entire body of the will and the signature thereto must be in the handwriting of the testator and that this must be established by unimpeachable evidence of at least three disinterested witnesses. See *Arendt* v. *Arendt,* 80 Ark. 204.

One of the attesting witnesses to the will testified that he had known L. W. Mason nearly all his life and was familiar with his handwriting and that the body of the will and the signature thereto were in the handwriting of L. W. Mason.

Two other witnesses testified that they had known L. W. Mason for a long time and were familiar with his handwriting. They said that they thought the body of the will and the signature thereto were in the handwriting of L. W. Mason.

Another witness testified that he was familiar with the handwriting of L. W. Mason and that the only reason he could not say that it was L. W. Mason's handwriting was because he did not see him write it.

(2)    All these witnesses were disinterested persons and there is nothing in their evidence or in the entire record reflecting on their character or in any way tending to impeach their testimony. Therefore the jury was warranted in finding in favor of contestee on the question of a holographic will.

The court at the request of counsel for the contestants also instructed the jury on the question of attesting a will in the manner required by the statute. As we have already stated, one of the witnesses who attested the will

testified that the entire body of the will and the signature thereto were in the handwriting of L. W. Mason. He further stated that he came to the house where Mason lived on the day the will was executed at the request of Mason for the purpose of attesting his will; that the other attesting witness and a justice of the peace went with him; that Mason first acknowledged the will before the justice of the peace and had the justice sign the acknowledgment and that he and the other attesting witness signed their names at the end of the will at the request of the testator; that before they signed it the testator had signed the will in their presence and told them that this was his fourth will and hoped it would be his last one.

The other attesting witness said that he went there for the purpose of attesting the will of the testator and did attest it. He stated that the word "will" was never mentioned while he was there but that he was called there by the testator for the purpose of witnessing his signature to a will. He answered questions propounded to him in an evasive manner and said that the justice of the peace was there too and wrote out the acknowledgment of the testator to the will and signed that and that the justice of the peace then asked the testator if this was his last one and that the testator replied that he did not know whether or not it was; that it might be and that it might not. The witness said that he supposed it was the will of the testator but that the testator never in fact called it by that name.

(3)  We think the evidence clearly shows that the testator, the justice of the peace and the two attesting witnesses were all present at the time the will was signed by each of them; that the said testator sent for these persons to witness his will and that they attested it in the manner required by the statute; at least, we think the jury was warranted in finding these to be the facts. See *Payne* v. *Payne*, 54 Ark. 415.

(4)  Counsel for contestants offered to prove by Ben Mason, a brother of L. W. Mason, that L. W. Mason, before he went to board with J. B. R. Bowen, stated that Bowen was indebted to him and that the only reason he

was going to board and live with Bowen was for the purpose of collecting his debt. The court refused the admission of this testimony before the jury and counsel for the contestants assigns this as error. They say the testimony should have been admitted upon the question of undue influence.

It seems to be well settled, both by text writers and the decisions of courts of the various states, that the statements and declarations of a testator, whether made before or after the execution of a will, are not competent as direct or substantive evidence of undue influence, but are admissible to show the mental condition of the testator at the time of making the will. When the condition of the testator's mind is the point of contention, statements or declarations of the testator are received as external manifestations of his mental condition and not as evidence of the truth of the things he states. If offered to prove an external fact, such as undue influence or fraud, such statements or declarations are merely hearsay and are liable to all the objections to which mere declarations of third parties are subject.

In a valuable and well considered case in which the authorities are thoroughly reviewed, the Supreme Court of Tennessee held that in a will contest declarations made by the testator prior to the execution of the will are admissible in evidence for the purpose of showing the mental capacity of the testator but are not admissible for the purpose of establishing the substantive fact of undue influence. *Hobson* v. *Moorman,* 115 Tenn. 73, 5 Am. & Eng. Ann. Cas. 601. Many cases are cited in the note to support the reported case.

The same case is also reported in 3 L. R. A. (N. S.) 749 and an extensive case note also appears there.

(5)   In addition to this the justice of the peace, who was also present when the will in question was executed, testified that at one time in a conversation with the testator the latter told him that Bowen was indebted to him and that he had gone there for the purpose of collecting his debt. This statement of the justice of the peace was not attempted to be contradicted by counsel for the con-

testee and it is well settled in this State that it is not prejudicial error to refuse to allow cumulative evidence of an undisputed fact.

(6-7) Counsel for contestants also offered to prove by J. L. Hoffman that L. W. Mason had told him that he intended at his death that all his property should go to his relatives, that whatever he had, he had obtained by inheritance from his father and that at his death he desired and intended that what he had left should go to his relatives. The court refused to admit this testimony to go before the jury and its action is assigned as error.

In the case of *Flowers* v. *Flowers*, 74 Ark. 212, the court said that the authorities are uniform in holding that the declarations of a testator made before the execution of a will are admissible to show his mental capacity when that issue is raised. See, also authorities *supra*.

In *Coghill* v. *Kennedy*, 119 Ala. 641, 24 So. 459, the court said on this subject, through Bricknell, C. J.:

"Inasmuch as the mental condition of a person can be determined only by his acts and declarations, these are admissible, whether made a reasonable time before or after the execution of the will, to establish everything pertaining to the testator himself—his memory, intentions, idiosyncracies, prejudices, affections, relations with, and feelings towards, the beneficiaries and all those who, if he had died intestate, would have been entitled to share in the distribution of his estate, and towards those charged with the exercise of undue influence."

Tested by this rule, we do not think the court erred in refusing the testimony. Hoffman stated that he had the conversation in question with Mason about two years before Mason went to live with contestee and that he thought the testator lived with the contestee about two years before his death.

Mrs. Mason, a sister-in-law of the testator testified that the testator lived with her for three years prior to going to the home of the contestee; that he left her house just after Thanksgiving, in November, 1911, and went to the home of contestee; that he lived there until his death which occurred June 8, 1913.

(8)   Declarations of a testator made prior to the exe-
cution of a will would necessarily be entitled to probative
force according to the nearness or remoteness of the time
at which they were made.  As the time became more re-
mote they would necessarily lose much of their probative
force and there would be a period of time at which such
statements would be entitled to no probative force what-
ever.  Such, we think, was the case here.  The declara-
tions were made at a period of time before the declarant
went to live with Bowen and amounted to no more than
a declaration that at that time he intended his property
to go to his relatives at his death.  The declaration was
made three and one-half years before the testator's death.
The period of time to be covered by the declarations of
the testator must necessarily be left to a great extent to
the sound discretion of the trial court under all the cir-
cumstances of each particular case.  The reason for this
is that the declarations lose value as the time at which
they were made grows remote, and when too remote, such
declarations lose their probative force, and are entitled
to no value whatever as proof of the mental capacity of
the testator.  Schouler on Wills, Executors and Adminis-
trators, 15th Ed., vol. 1, section 193.

It is contended that this ruling is contrary to the
ruling announced in *Tobin* v. *Jenkins*, 29 Ark. 151, but
we do not think so.  In that case a will which was made
in 1868 was contested on the ground of the mental incapa-
city of the testator.  The court admitted in evidence a
former will executed in 1862 which was executed at a time
when there was no question as to the capacity of the tes-
tator to make a will.  The first will, with regard to the
disposition of the testator's property to his son to the ex-
clusion of the children of his daughter, was essentially
the same as the contested will.  Under the circumstances
the court held that it was competent evidence to be con-
sidered in connection with the other evidence to show
whether the testator's mind was rational at the time the
will of 1868 was executed.

(9)   As we have already seen, while the will under
consideration in the present case made a disposition of the  .

testator's property entirely different from the disposition he had intended to make of it, his declarations on the subject were at a period of time before he went to live with the contestee and the period of time was so remote that we do not think his declarations are entitled to any probative force whatever as tending to show whether or not he was mentally competent at the time he executed the will in question.

In the case of *McCulloch* v. *Campbell,* 49 Ark. 371, upon the question of undue influence requisite to avoid a will, the court said:

"As we understand the rule, the fraud or undue influence, which is required to avoid a will, must be directly connected with its execution. The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property. And the influence must be specially directed toward the object of procuring a will in favor of particular parties."

What was there said by the court has been uniformly and repeatedly followed since that decision. In the case of *Taylor* v. *McClintock,* 87 Ark. 243, the court, in discussing the question of testamentary capacity said:

"The test of testamentary capacity as declared by this court is that the testator shall have capacity to retain in memory without prompting, the extent and condition of his property, and comprehend to whom he was giving it; and to be capable of appreciating the deserts and relation to him of others whom he excluded from participation in the estate."

Objections are made to certain instructions given by the court. We do not deem it necessary however to set these instructions out or discuss them in detail. It is sufficient to say that the court gave full and complete instructions on the questions of undue influence and testamentary capacity in accordance with the rules of law laid down in the opinions just cited.

(10)   Finally, it is contended by counsel for the contestants that the verdict of the jury was not warranted by the evidence.   It is true the justice of the peace who was present at the time the will was executed and who took the testator's acknowledgment thereto, said that the testator at that time was not mentally capable of transacting business of any kind; and that his testimony is corroborated by other witnesses for the contestants.   It appears from their testimony that the testator had been an invalid for most of his life, suffering with kidney trouble and later with consumption.   In order to alleviate his pain his physician prescribed morphine for him and during the last years of his life he became addicted to the use of that drug.   It appears from the testimony of the contestants that his mind had become so weakened by his ill health and his constant use of morphine that he was not capable of making his will at the time it was executed. But we can not balance the evidence and determine where the preponderance lies, for it is a well settled rule of law in this State that the verdict of the jury must be upheld on appeal if there is any substantial evidence to support it.

In the case before us one of the attesting witnesses to the will said that he had known the testator nearly all of his life and that his mind was perfectly clear at the time he executed the will and that he knew what he was doing.   A physician who attended him in the fall that he executed the will testified that his mind was clear at that time and that he was mentally capable of executing the will.   Another physician who attended him in the spring and at a period of time about a month before he died, stated that although addicted to the use of morphine the testator's mind was clear and that he was capable of attending to business of any kind.   Other witnesses testified that although the testator's body was weakened by disease, his mind remained clear up until the time he died and some of them regarded him as a man of unusual business ability.

On the subject of undue influence, but little need be said.   There is little, if anything, to show undue influence

except the fact that the testator made a will in favor of the man with whom he lived during the last year and a half of his life. There was abundant testimony to warrant the jury in finding that the will was not procured by undue influence exercised on the testator and there was sufficient evidence to uphold the verdict of the jury on the question of the testamentary capacity of the testator.

It follows that the judgment will be affirmed.