## KENNEDY *v.* QUINN.

Opinion delivered December 15, 1924.

1. WILLS—EVIDENCE OF WANT OF TESTAMENTARY CAPACITY AND OF UNDUE INFLUENCE.—Evidence in a will contest of the want of testamentary capacity of testatrix and of undue influence exerted upon her, *held* sufficient to go to the jury.

2. WITNESSES—IMPEACHMENT ON CROSS-EXAMINATION.—For purposes of impeachment, a witness may be asked on cross-examination whether he was guilty or convicted of certain crimes, but not whether he had been accused of such crimes or indicted therefor.

3. TRIAL—IMPROPER ARGUMENT.—While a reference in argument to a witness having been accused of train robbery was improper, any prejudice therefrom was removed where the court sustained an objection thereto, and told the jury that the testimony had been excluded, and should not be considered.

4. TRIAL—INSTRUCTION TO DISREGARD TESTIMONY.—An instruction to disregard testimony that a witness had been arrested three times, admitted without objection, was properly denied where appellant's counsel asked questions relating to those incidents which elicited answers exculpating the witness

5. WILLS—TESTATOR'S DECLARATIONS.—Declarations of a testatrix made before or after executing a will, are inadmissible as substantive evidence to prove undue influence, but they may be considered to determine her mental capacity at the time of executing the will and to show her feelings, intentions and relations toward her kindred.

6. WILLS—PHYSICAL CONDITION OF TESTATRIX.—Though a person suffering from physical weakness or disease may enjoy full testamentary capacity, the jury may consider evidence showing such condition in determining whether the will was in fact the will of the testatrix.

7. WILLS—INSTRUCTION AS TO UNDUE INFLUENCE.—An instruction that if contestee, by constant importunity, unduly influenced his wife to execute a will in his favor, and, on account of her weakened physical condition, she yielded, the verdict should be for contestants, though not well stated, was not open to a general objection, in view of other instructions, which told the jury that testatrix could make a valid will notwithstanding her weakened physical condition, if she possessed testamentary capacity, and that the will would not be invalid because of undue influence if she understood what she was doing and was not unable, on account of weakened physical condition, to resist influence brought to bear upon her.

8. WILLS—INSTRUCTION AS TO UNDUE INFLUENCE.—An instruction
   that, if testatrix, in executing her will, did not act intelligently
   and voluntarily, but was subject to her husband's will, the ver-
   dict should be for contestants, was not open to the objection
   that the jury might find against the will if testatrix was sub-
   ject to her husband's will because of her love for him and
   desire to benefit him.

Appeal from White Circuit Court; *E. D. Robertson,*
Judge; affirmed.

STATEMENT OF FACTS.

This is an action by J. W. Quinn, Mrs. S. H. Mulkey
and Mrs. Mary J. Paschal, to contest the will of their
sister, Mrs. Sue E. Kennedy, who died at a hospital in the
city of Little Rock, following an operation to remove a
cystic tumor, on August 27, 1922.

Mrs. Kennedy was from nine to eleven years older
than her husband, H. B. Kennedy, and she was about
fifty years old when she was married, and she was about
67 years old at the time of her death. Mrs. Kennedy
had suffered from this tumor for several years before
her death, and the tumor had grown to be large enough
to contain about two gallons of a fluid, and had attached
itself to certain of her organs, thus showing that her
condition was very serious at the time of the operation.
She rallied from the operation, and there was hope of
her recovery, but she took a turn for the worse, and,
after failing rapidly, died on the fifth day after the
operation.

The bulk of Mrs. Kennedy's estate is in Mississippi
County, but her residence at the time of her death was in
White County, and she had been advised by her local
physician that her condition required an operation, and
she came to Little Rock to have it done, and, while at the
hospital, she executed the will involved in this proceed-
ing. Her husband testified that, while his wife was
sanguine of her recovery, she decided to execute a will,
and gave him directions in regard to its provisions, and
that, pursuant to these directions, he employed an attor-
ney to prepare it, and he took with him to the hospital

two of the employees of the bank where he and his wife carried their bank account, to attest the will as witnesses. These witnesses testified that they went to the hospital, and found Mrs. Kennedy sitting in a chair on the veranda of the hospital. She knew one of them, who had cashed checks for her, spoke to them both, and they told her they had come, at Mr. Kennedy's request, to witness the will. She expressed satisfaction that they had done so, and stated that she would go to her room and get her glasses. The young men who were present to witness the will offered to perform this service for her, but she declined the service, stating that they would not know where to find the glasses. Upon her return to the veranda, Mrs. Kennedy looked over the will, and one of the witnesses read it to her, and she stated that it conformed to her wishes and directions, and the will was then signed and witnessed.

A large number of witnesses, including the surgeon, testified that, in their opinion, Mrs. Kennedy was rational and in full possession of her faculties on the day she signed the will, and it is very earnestly insisted that there was no legal evidence to the contrary. There was testimony to the effect that, as Mrs. Kennedy's physical ailment developed, she became forgetful and indifferent to her oldest and best friends and nearest relatives, with none of whom had there been estrangement or other apparent cause for her changed attitude, except her ailment, and one witness testified that "her mind had gradually been getting worse for two years or more prior to her death."

A hypothetical question, predicated upon testimony adduced by contestants, was submitted to a physician, who answered the question by expressing the opinion that Mrs. Kennedy did not have testamentary capacity at the time she executed the will. The will was executed at the hospital, and, in anticipation of the operation, Mrs. Kennedy's sisters were present, and there is testimony to the effect that, on the day the will was executed, Mr. Kennedy went down town with his wife's sisters,

and, while they were engaged in doing some shopping for Mrs. Kennedy, Mr. Kennedy caused the will to be executed. It is the theory of the contestants that this was done designedly for the purpose of having the sisters absent when the will was executed. There was certain other testimony tending to show that Mr. Kennedy was mercenary in his dealings with his wife, and that there was no deep affection between him and his wife. The principal testimony tending to show that fact was the admission by Mr. Kennedy that he had caused a will to be prepared about a year previous to the will in issue, the provisions of which were substantially similar to the one in litigation, but she declined to sign that will, and there was other testimony to the effect that Mrs. Kennedy had said she would never execute such a will as long as she was in her "right mind." This last testimony was objected to.

On his cross-examination Mr. Kennedy admitted that he had been arrested for reckless driving, and did not deny his guilt. He admitted he had shot a man in Kentucky and had been arrested for so doing, but testified that he had never been indicted for the shooting. He also admitted that he had been arrested in Oklahoma for carnally abusing a girl under the statutory age of consent, but he also testified that this was a frame-up. These questions were asked without objection, and Kennedy was re-examined by his attorney to some extent in regard to these charges. There was testimony that Kennedy had admitted that he had been arrested for participating in a train robbery, but this testimony was excluded on objection being made to it.

Among other instructions requested by contestee was one that "you will disregard the evidence showing that Mr. Kennedy has been arrested on three occasions," and an exception was saved to the court's refusal to give it.

During the argument before the jury, Mr. Brundidge, of counsel for contestants, said that Kennedy had been in jail in Oklahoma on a charge of train robbery

and, objection being made to this argument, the court sustained the objection and stated to the jury that this testimony had been excluded, and for the jury to disregard it. Thereupon Mr. Brundidge said that the testimony in regard to the carnal abuse charge had not been withdrawn, and that he would prefer being in jail on a charge of train robbery, and concluded this statement by saying, "Now, take that, if you like it any better." No objection appears to have been made to this last argument.

Contestee also excepted to certain instructions relating to the issues of testamentary capacity and undue influence which were given over his objection, and also excepted to the court's refusal to give certain instructions which he requested relating to the same subjects, which will be set out and reviewed in the opinion.

*Frauenthal & Johnson, John E. Miller* and *J. T. Coston,* for appellant.

The evidence was insufficient to sustain the verdict. The law only requires that a testator's memory be sufficient to recollect what property she owns, without prompting, and comprehend to whom she is giving it. 66 Ark. 628. A verdict so palpably against the weight of the evidence as to shock the sense of justice and right will be set aside. 70 Ark. 385. Appellant's request for instruction No. 17 should have been granted. It sought to limit the declaration by the testatrix before signing the will to the issue of mental capacity, as they were wholly incompetent on the question of undue influence. 122 Ark. 407; 180 U. S. 572; Wigmore on Ev., vol. 1, p. 42; 75 Ark. 232; 99 Mich. 250; 84 Me. 436; 117 N. C. 558; 79 N. C. 467; 33 Ala. 190; 42 Ala. 106; 38 Mont. 451; 158 Calif. 650. There was no evidence of undue influence, and the court erred in submitting that issue to the jury. 154 Ark. 523. Instruction No. 7 was erroneous, as it authorized a finding against the will if the testator, on account of her weakened physical condition, yielded to his request and executed the same, which is not the test of undue influence. 1 Underhill on Wills, § 138; 114 Mo.

35; 136 N. Y. 515. It is not unlawful to procure a will in one's favor by fair persuasion and kind offices. 13 Ark. 475; 19 Ark. 551; 49 Ark. 371. A failure to act "intelligently," wisely, judiciously or justly is not sufficient to vitiate a will. 87 Ark. 243; Underhill on the Law of Wills, pp. 145-147; 28 R. C. L. § 103. Kennedy could not get a fair trial after the improper remarks of counsel for appellees. A new trial should be granted. 70 Ark. 305; 74 Ark. 210; 11 Texas Ct. of Appeals, 378. Instruction No. 16, which went to the character of appellant, should have been given. 20 Tex. Ct. of Appeals, 271. Improper evidence cannot always be removed by admonition of the court not to consider it, in which case a reversal should be had. 100 Ark. 107; 19 N. Y. 302.

*Sam Costen, Wils Davis,* and *Brundidge & Neelly,* for appellee.

A verdict will be sustained if there is any substantial evidence to support it. 122 Ark. 407; 127 Ark. 68. Where both undue influence and mental capacity are in issue, a verdict will be sustained if either is proved, although the evidence might not be sufficient on the other proposition. 147 Iowa 725; Pritchard on Wills, 136; 96 Am. Dec. 697. A wide latitude is permitted as to admissible evidence on the issues of unsound mind and undue influence, and indirect evidence as to facts from which the jury might infer either is sufficient. 197 Mo. 68; Pac. 634; Pritchard on Wills, 155; 28 R. C. L. 93; 195 Mich. 432; 87 Ark. 243; 29 Ark. 151; 154 Ark. 516; 49 Ore. 367; 227 Ill. 183; 28 R. C. L. 143. The question of undue influence is submitted to the jury more readily when the testator is mentally weak. 115 Penn. St. 32; 3 Strobhart (S. C.), 44, 87 Ark. 148. On the question of unsound mind it is competent to prove a previously expressed purpose contrary to the terms of the will. 74 Ark. 212. Participation of beneficiary in making of will is a circumstance to be considered. 28 R. C. L. p. 145; 28 L. R. A. (N. S.) 273. The rule obtains in this State that declarations of a testator made prior to the execution of the will are admissible for the purpose

of showing whether the testator was sane or insane, but they are not admissible for the purpose of establishing the substantive fact of undue influence. 122 Ark. 407. Instruction No. 17 did not correctly state the law. 115 Tenn. 91. See also 96 Tenn. 89; 122 Penn. St. 239; 3 Jones on Evidence, 353; 5 Ann. Cas. 608; 28 R. C. L. 151; 35 L. R. A. 102. Even conceding that No. 17 was a correct instruction, it was covered by other instructions given. 132 Ark. 449; 133 Ark. 448. The argument of counsel for appellee was not prejudicial, and the cases cited by him are not in point.

SMITH, J., (after stating the facts). The jury found against the will, and the contestee insists that there was no testimony legally sufficient to support that finding. We think, however, that there was enough testimony to warrant the submission of the issues of lack of testamentary capacity and of undue influence to the jury, and, this being true, we do not stop to consider what the preponderance of the testimony shows.

We do not think any error was committed in refusing to give the instruction directing the jury to disregard the testimony showing that Mr. Kennedy had been arrested on three occasions. This testimony was admitted without objection, and counsel for contestee asked questions relating to those incidents, which elicited answers exculpating Mr. Kennedy. There appears to have been no denial that Kennedy was guilty of speeding, and, while this does not appear to involve moral turpitude which would tend materially to impair the credit of the witnesses, we cannot say that the jury should have been told to disregard it, especially as the testimony had been admitted without objection. We do not understand that Mr. Kennedy denied having shot a man in Kentucky, and this was not therefore a mere accusation against him, although he was not indicted. The charge against Kennedy in regard to having carnally abused a child appears to have been a mere accusation, and, had the request to exclude been limited to it, the court should have excluded that testimony.

We have frequently and recently decided that a witness cannot be interrogated on his cross-examination for purpose of impeachment concerning indictments or mere accusations of crime. He may be asked if he was guilty or was convicted, but he cannot be asked if he was indicted or accused. *Johnson* v. *State,* 161 Ark. 111; *Jordan* v. *State,* 165 Ark. 506; *Parnell* v. *State,* 163 Ark. 316.

But, as we have said, the instruction was not asked until after this testimony had been admitted without objection, and the request, as made, included not only the mere accusation of having carnally abused the child, but included also the admitted acts of speeding and of having shot a man.

The reference in the argument to appellant having been accused of train robbery was, of course, improper; but the court sustained the objection thereto, and told the jury that this testimony had been excluded and should not be considered, and we think this admonition removed any prejudice resulting therefrom.

We are also of the opinion that the argument of counsel that appellant had committed the offense of carnal abuse was improper; but no objection appears to have been made to it.

Contestee asked an instruction numbered 17, reading as follows: ''The evidence of statements and declarations on the part of Sue E. Kennedy of her intention to make a will or not make it, disposing of her property in a certain way, can be considered by you for the purpose only of determining whether she was sane or insane at the time she signed the will.''

This instruction obviously related to the testimony that Kennedy had caused a will, similar in its provisions, in that he was made the chief beneficiary, to be prepared, and that his wife had refused to sign it, and had stated that she would never sign such a will so long as she was in her ''right mind.''

It is conceded that this testimony was competent on the issue of lack of testamentary capacity on the part of

the testatrix, and it is insisted that the instruction was asked for the purpose of excluding the. testimony from the consideration of the jury when they came to the question of undue influence, and it is urged that the instruction should have been given upon the authority of the case of *Mason* v. *Bowen,* 122 Ark. 407, where we said: "It seems to be well settled, both by text-writers and the decisions of courts of the various States, that the statements and declarations of a testator, whether made before or after the execution of a will, are not competent as direct or substantive evidence of undue influence, but are admissible to show the mental condition of the testator at the time of making the will. When the condition of the testator's mind is the point of contention, statements or declarations of the testator are received as external manifestations of his mental condition and not as evidence of the truth of the things he states. If offered to prove an external fact, such as undue influence or fraud, such statements or declarations are merely hearsay and are liable to all the objections to which mere declarations of third parties are subject."

In so announcing the law, we quoted the decision of the Supreme Court of Tennessee in the case of *Hobson* v. *Moorman,* 115 Tenn. 73, which case is annotated in 5 Am. & Eng.. Ann. Cas. 601, and 3 L. R. A. (N. S.) 749.

This case, as we said in *Mason* v. *Bowen, supra,* was a well considered case, and, by approving and following it, we are committed to the doctrine that the statements and declarations of a testator, whether made before or after the execution of the will, are not competent as direct or substantive evidence of undue influence, and counsel insist that the purpose and effect of the refused instruction was to apply that doctrine to the facts of this case.

But the instruction was not so worded. It did not tell the jury that the testimony of Mrs. Kennedy in regard to the disposition of her estate could not be considered on the question of undue influence. It stated

that this testimony could be considered for the purpose only of determining whether Mrs. Kennedy was sane or insane at the time she signed the will. The case of *Hobson* v. *Moorman,* which we followed in *Mason* v. *Bowen,* does not thus limit the testimony. Mr. Justice McALISTER, who delivered the opinion of the court in that case, there said: "In our opinion, the great weight of authority confirms the rule, announced by the circuit judge in his instructions to the jury, that such previous declarations (indicating the disposition which the testator intended to make of his estate) are always admissible for the purpose of illustrating the mental capacity of the testator and his susceptibility to extraneous influence, and also to show his feelings, intentions, and relations to his kindred and friends; but such declarations are not admissible as substantive evidence of undue influence."

Had the requested instruction been given, the jury would have had no right to consider the declarations of Mrs. Kennedy for the purpose of showing her feelings towards the parties to this litigation, and the evidence was competent for that purpose, although it was not admissible as substantive evidence of undue influence.

The court gave, over contestee's objection, an instruction numbered 7, reading as follows: "The jury are instructed that, if you find from the testimony in this case that the defendant, H. B. Kennedy, unduly influenced the deceased, Sue Kennedy, to execute the alleged will in his favor, by constant entreaty, importunity or persuasion, and that, on account of her weakened physical condition, she yielded to his request and executed the same, then your verdict will be for the plaintiffs."

The objection to this instruction is that it rendered the will invalid on account of Mrs. Kennedy's weakened physical condition if, while she was in such condition, Kennedy exercised influence on her which induced the execution of the will. It is, of course, the law that a person may enjoy full testamentary capacity although he is suffering from extreme physical weakness or from

the violence of disease; but the jury may consider the evidence showing the physical condition of the testator in determining whether a will executed under those circumstances was in fact the will of the testator. The instruction does not direct the jury to find for contestants because an influence was exercised on Mrs. Kennedy while she was in a weakened physical condition, but to do so if she was unduly influenced while in that condition, and other instructions defined undue influence in accordance with the decisions of this court on that subject as announced in *McCulloch* v. *Campbell,* 49 Ark. 367.

We understand the instruction to mean that, if the jury should find that if Mrs. Kennedy was induced by constant entreaty, importunity or persuasion to execute the will, and that she was unable, because of her physical condition, to resist this entreaty, importunity or persuasion, when she would not have yielded otherwise, that an undue influence had been exercised, and, as thus interpreted, the instruction is the law. The instruction might more accurately have expressed this idea, but there was no specific objection to it, and, as we have said, other instructions given on behalf of contestee made it plain to the jury that Mrs. Kennedy could make a valid will notwithstanding her weakened physical condition, if she possessed testamentary capacity, and that the will would not be invalid because of undue influence on account of Kennedy's conversations with his wife on that subject, if she knew and understood what she was doing, and had not been induced so to do because she was unable, on account of weakened physical condition, to resist influences brought to bear upon her whereby she executed a will which she would not otherwise have made.

The court gave, over contestee's objection, an instruction numbered 5, reading as follows: "The jury are instructed that, if you find from the testimony in this case that the testator, in the execution of the will, did not act intelligently or voluntarily and as a free agent, but was subject to the will and purpose of the defendant,

H. B. Kennedy, then your verdict will be for the plaintiffs and against the will."

The objection to this instruction is that it leaves out of account any consideration of the question of undue influence, and that, under this instruction, the jury would have to find against the will, although the jury might believe that Mrs. Kennedy was subject to the will of her husband because of her love for him and her desire to benefit him. We do not think the instruction is open to this objection. The jury was not instructed to find against the will upon the mere finding that Mrs. Kennedy had become subject to the will and purpose of her husband, but to do so if they found that she did not act intelligently or voluntarily and as a free agent. The influence would be an improper one if it deprived the testator of the capacity to act intelligently or voluntarily and as a free agent, and we think no error was committed in giving the instruction.

Certain other questions are raised which we do not think require discussion, and, as we find no prejudicial error, the judgment is affirmed.