MOTORS INSURANCE CORPORATION *v.* LOPEZ.

4-9185                                                  229 S. W. 2d 228

Opinion delivered April 24, 1950.

Rehearing denied May 22, 1950.

204

*Barber, Henry & Thurman,* for appellant.

*John H. Lookadoo* and *Agnes F. Ashby,* for appellee.

LEFLAR, J.   Plaintiff Lopez recovered judgment in the Circuit Court on a policy of automobile collision insurance issued to him by defendant insurance company, and defendant appeals.

Plaintiff's car was overturned and wrecked while he was driving it. The loss fell clearly within the coverage of defendant's policy, and defendant's adjuster was sent promptly to check on the amount of the loss. Plaintiff met the adjuster at a garage to which the wrecked car had been towed. They looked over a 4-page list of repair items prepared by the garage operator, the proposed cost of which totaled $873.72, then plaintiff signed a "Loss or Damage Agreement" prepared by the adjuster, the gist of which was that he agreed that the sum of $873.72, minus $56 under the deductible clause and for tire betterment, should constitute the full amount of his claim. A short while after the adjuster departed plaintiff, according to his own testimony, talked with the garage operators and was told by them that even after his car received the repairs contemplated it would not be in as good condition as before the wreck, that anybody would

be able to tell that it was a wrecked car, and that it would never again be as good a car as it had been before the wreck. Plaintiff at once got in touch with the adjuster, telling him that he repudiated the settlement figure on the theory that under the policy the insurer was permitted to repair the automobile or its parts, rather than pay the actual amount by which the car was damaged in money, only if the result would be "of like kind and quality" as the vehicle before the wreck. This was without question in accordance with the actual provisions of the policy.

The insurer refused to reconsider the amount to be paid under the policy. Plaintiff then brought this action claiming that the car was worth $1,850 before the wreck and $400 after the wreck so that, with $50 off under the deductible clause, he was entitled to $1,400 under the policy, plus interest, 12 per cent penalty and an attorneys' fee. (Ark. Stats., § 66-514.) At the trial before a jury the insurer relied upon the "Loss or Damage Agreement," contending that plaintiff was bound by it, and also contended that actual damage to the wrecked car did not exceed the amount of the cost of proposed repairs as originally calculated. The jury's verdict was for the plaintiff in all respects, and judgment was rendered against defendant for the $1,400 claimed, together with the statutory 12 per cent penalty and a $350 attorneys' fee.

The first matter to be considered is appellant insurer's contention that the "Loss or Damage Agreement" was a settlement contract binding upon the plaintiff. That "Agreement," after setting forth the amount of damage settled upon, contained these words:

"The sole purpose of this instrument is to fix and evidence the total amount for which claim is made. This instrument is, and is intended to be binding as to the total amount of loss or damage said to have occurred under the policy. This instrument is not an acceptance of liability by Motors Insurance Corporation, hereinafter referred to as the Corporation, does not commit the Corporation to payment of said claim and does not in any

sense waive any of the conditions or provisions of the policy of said Corporation. Furthermore, upon, in the event, and in consideration of the payment of the above amount by the Corporation, the undersigned hereby agrees to release and discharge the Corporation from any and all liability under its policy for said loss and/or damage, and the undersigned further agrees to hold the Corporation, its successors or assigns, free and harmless from further claim for the loss described.''

The terms of this ''Agreement'' of course show that it is not a contract, and is not by itself intended to be a contract. It is designed ''to fix and evidence'' the amount of the claim, and purports to bind the insured to the amount thus fixed and evidenced, but it does not purport to bind the insurer at all. It expressly declares that the insurer is bound to nothing by it, is not committed to the making of any payment whatever. No consideration moving from the insurer, in return for the insured's agreement to limit his claim to the amount set, is even recited. No promises are made by the insurer. The only consideration referred to, on the insurer's side, is the payment to be made if and when and in the event that the insurer chooses or is compelled to pay on the policy. This one-sided undertaking is not a contract in any legal sense. It lacks the mutuality which is required by the most elementary principles of our law. *Eustice* v. *Meytrott,* 100 Ark. 510, 140 S. W. 590; Restatement, Contracts, § 80; 1 Williston, Contracts, § 103, *et seq.*

Appellant insurer urges, however, that we have held otherwise, and cites *Cash* v. *Home Life Ins. Co.,* 197 Ark. 670, 125 S. W. 2d 99, as holding that an identical loss and damage agreement was valid. It is true that the agreement in the *Cash* case was substantially identical with that here involved, and that it was held valid, but there is one significant difference in the facts. This difference is that in the *Cash* case the insurance company had already made the payment agreed upon. Once the payment was made by the insurer the one-sided conditional agreement of the insured was turned into an exe-

cuted contract. The payment was the consideration for the insured's undertaking to limit his claim.

In the present case, in contrast, the payment was never made. The insured withdrew his unilateral agreement to accept it in full satisfaction of his claim before payment could be tendered. Thereafter it was not even an offer for a contract; it was merely evidence for the jury to consider, along with the other evidence that was available, on the proper amount of the insured's claim.

Much of appellant insurer's argument on this appeal is based on the assumption that the ''Loss or Damage Agreement'' was a contract binding on the insured, to be set aside only if insured established fraud or overreaching in its procurement. Since it was not a contract at all, questions as to sufficiency of evidence of fraud to justify setting it aside, and the propriety of instructions directed to that issue, need not be considered.

The other main issue in the trial below was presented on the proper theory that the ''Loss or Damage Agreement'' was not controlling. This issue was as to the amount of actual damage to the Lopez car—whether it was $873.72 as contended by the Company, or $1,450 as contended by the insured, or some other amount. There is in the record substantial evidence fixing the damage at the higher amount, and it cannot be seriously contended that this evidence is not adequate to support the jury's verdict for the full amount claimed by plaintiff.

One other question remains to be discussed. This is whether the Circuit Judge improperly admitted hearsay evidence when he allowed plaintiff Lopez to testify that the garage operators told him, at once after he signed the ''Loss or Damage Agreement'' prepared by defendant's adjuster, that after his car received the repairs contemplated it would not be in as good condition as before the wreck, that anybody would be able to tell it was a wrecked car, and that it would never again be as good a car as it had been before the wreck. If this evidence was received or considered by the jury for the

purpose of establishing the truth of what was asserted in it, that is, for the purpose of proving the extent to which the car was damaged, it was inadmissible hearsay, and prejudicial error was committed in allowing it to go to the jury. If on the other hand the mere fact that the statements were made to and heard by Lopez was itself relevant to some issue in the case, and the jury was restricted to consideration of the statements on that issue solely, there would be no violation of the hearsay rule. See 2 Ark. L. Rev. 26. A statement made out of court is not hearsay if it is given in evidence for the purpose merely of proving that the statement was made, provided that purpose be otherwise relevant in the case at trial. 5 Wigmore, Evidence, § 1361; 6 *Ibid.*, § 1770.

At once after plaintiff Lopez gave the testimony in question, and appellant's attorney objected, the Circuit Judge told the jury:

"Now, gentlemen of the jury, that doesn't go to the extent of the damage. That is the matter that must be proven by direct testimony of witnesses. This testimony goes to the attitude of the plaintiff in his dealings with the insurance company. In other words, it has been stated by the insurance company that they offered to settle with him for a certain sum. This testimony is admitted to you for his reason for not accepting that sum. Now, the extent of the damage to this car will still have to be proved by the plaintiff by witnesses who know what that damage is and not by hearsay. This testimony will not be considered by you as going to the actual damage to the car, but goes to the reason for the plaintiff not accepting the eight hundred and whatever dollars it was offered in settlement of his claim for damages."

After a further statement by counsel, the Judge repeated his extemporaneous instruction. He used one ambiguous sentence, "It goes to the matter of repair and not to the extent of the damage." But he followed this sentence with the further explanation: "Now then, this testimony goes to the question of why the car was not

repaired and not the extent of the damage. I don't know whether I have made myself clear to you or not, but the plaintiff must prove his damage and this testimony will not be considered by you as going to the amount of damage.''

A similar situation was presented in *Sovereign Camp Woodmen of the World* v. *Cole,* 192 Ark. 268, 90 S. W. 2d 769. There a double defense had been raised by the insurance company: (1) that plaintiff was not totally disabled, and (2) that proof of disability had not been furnished by the plaintiff to the insurer. Plaintiff offered in evidence the affidavits of three physicians, previously filed by them with the insurer, each of which was to the effect that the insured was totally and permanently disabled. The trial judge admitted the affidavits in evidence on the issue of whether proof of disability had been furnished to the insurer, but at the same time admonished the jury that they should not consider the physicians' affidavits as proof of disability. In sustaining the trial judge's action, Judge FRANK G. SMITH said, ''They were admitted for the purpose of showing that proof of disability had been made. Restricted to this purpose, the testimony was competent.'' If the jury had been allowed to consider the affidavits as evidence of the plaintiff's condition of being totally disabled, the statements made out of court would have been used to prove the truth of the very matter asserted in them, and would have been inadmissible hearsay.

The same idea was expressed by HART, J., in *Mason* v. *Bowen,* 122 Ark. 407, 413, 183 S. W. 973, 975, Ann. Cas. 1917D, 713: ''It seems to be well settled, both by text-writers and the decisions of courts of the various states, that the statements and declarations of a testator, whether made before or after the execution of a will, are not competent as direct or substantive evidence of undue influence, but are admissible to show the mental condition of the testator at the time of making the will. When the condition of the testator's mind is the point of contention, statements or declarations of the testator are received as external manifestations of his mental condition and not as

evidence of the truth of the things he states. If offered to prove an external act, such as undue influence or fraud, such statements or declarations are merely hearsay and are liable to all the objections to which mere declarations of third parties are subject." *Accord: Kennedy* v. *Quinn,* 166 Ark. 509, 266 S. W. 462.

If the jury had been allowed to consider, on the issue of the amount of damage to his car, the testimony of plaintiff Lopez as to what the garage operators told him about the worth of the proposed repairs, the hearsay rule would have been violated. But the Circuit Judge specifically and forcefully told the jury that they should not consider the evidence on that issue. Their consideration of this testimony was limited to the secondary issue of what happened at the time the "Loss or Damage Agreement" was signed and then repudiated. In view of the instructions given we hold that there was no reversible error.

The judgment of the Circuit Court is affirmed.