RESOLUTE INSURANCE COMPANY *v.* BAILEY.

4-9950                                            253 S. W. 2d 771

Opinion delivered December 22, 1952.

Rehearing denied January 26, 1953.

*Josh W. McHughes,* for appellant.

*Willis V. Lewis,* for appellee.

MINOR W. MILLWEE, Justice. Appellees, J. W. Bailey and J. F. Dempsey, are partners doing business as Bailey Oil Company in Pulaski County, Arkansas. They brought this action against the appellant, Resolute Insurance Company, to recover collision damages to one of their

heavy Mack motor trucks, under an insurance policy executed by appellant on August 21, 1950.

Appellees alleged that the truck was damaged in the sum of $2,734 and that they were entitled to judgment in that sum, less $250 deductible under the provisions of the policy, or the sum of $2,484, plus penalty and attorney's fee. They also alleged that appellant had failed and refused to pay the loss after appellees' full compliance with all provisions of the policy.

Appellant answered with a general denial and specifically denied that appellees filed proof of loss. By agreement there was a trial before the court sitting as a jury resulting in a judgment for appellees for $2,484, plus the statutory penalty of 12% and attorney's fee of $500.

There is little dispute in the evidence. Appellees' truck collided with another vehicle near El Dorado, Arkansas, on January 16, 1951. The driver of the truck notified appellee Bailey immediately after the collision and the latter immediately notified appellant's local agent. Before Bailey reached El Dorado on the night of the accident, an adjuster from El Dorado representing the appellant had visited the scene of the collision and inspected the truck. This adjuster took written statements from Bailey and the truck driver the next morning and directed Bailey to have a wrecker take the damaged truck to North Little Rock and this was done. The truck was taken to Robinson's Garage, which was partly owned by appellees and was operated by J. E. Robinson, who was paid a weekly salary to keep appellees' trucks in repair and in addition Robinson did repair work for others. Upon arrival of the truck, it was inspected by appellant's Little Rock adjusters, J. W. Tisdale and Bob Terry, co-owners of the Arkansas Adjustment Company.

A few days later J. E. Robinson and William Etzback, of Rebsamen Motors, made separate estimates of the necessary repairs to the truck. Robinson's estimate included $2,300.82 for parts and $199.18 for labor. Reb-

samen Motors' estimate included $2,283.32 for parts and Etzback estimated labor costs at $700. Summers & Corbin Garage also submitted an estimate, at appellant's request, of $632.14 which included $439 for labor and the balance for parts. None of the estimates included the undisputed damage of $104 to a tire and $130 for wrecker service in moving the truck from El Dorado to North Little Rock.

Adjuster Tisdale inspected the damaged truck at the time the estimates were made by Robinson and Rebsamen Motors and concurred in such estimates as to damaged parts that would have to be replaced. Parts prices were obtained directly from the manufacturer and many of the parts were to be exchanged. Tisdale considered the bid submitted by Summers & Corbin to be grossly inadequate to cover the damage and did not accept it as a valid bid and so advised the appellant. Appellee Bailey had Robinson to submit the low bid of $199.18 for labor because appellees were paying Robinson a weekly salary and knew they could obtain the scarce parts for the truck which they urgently needed in their business as gasoline distributor. Appellant's adjusters authorized Robinson to proceed with the repairs on the basis of his bid.

A few days later one of the adjusters informed Bailey that appellant "had changed their minds" and had elected to take the truck to Tulsa, Oklahoma, and have it repaired. Although Robinson had already purchased the parts and had received most of them, Bailey reluctantly signed a release for appellant to take the truck to Tulsa, provided the repairs were made within 20 days. About 15 days later a small 1935 model wrecker arrived from Tulsa, Oklahoma, and the driver for the trucking company immediately concluded that the wrecker was too small to carry the damaged truck to Oklahoma. He called his employer and about three days later appellant's adjuster from Tulsa arrived. After some investigation he advised Bailey that the company did not have a wrecker large enough to take the truck to Tulsa; that it might take 10 or 15 days longer to find

one; and that there was nothing he could do about it. He then turned to the wrecker driver and said: "Let's just forget about it and go to the races." Bailey had previously apprised appellant's adjusters of a heavy hauling company near his place of business that could take the wrecked truck to Tulsa and had even offered to take the truck himself, but such offer was never accepted.

On or about March 5, 1951, Bailey told Robinson to proceed with the repairs and this was done at a cost of approximately $3,500. The heavier actual cost was incurred on account of the inadequate charge which Bailey had authorized for labor in order to get the truck on the road and certain damages which were not visible when the estimates were made, including a new transmission. Upon appellant's refusal to make payment under the policy this action was brought by appellees' on April 2, 1951. Appellant's local agent and adjusters freely admitted that appellees fully cooperated in every way in seeking to adjust the loss and that they had signed all papers which they had been requested to sign.

The only testimony in opposition to the foregoing is that of L. V. Sweatman who made the Summers & Corbin estimate. He thought the truck frame could have been straightened without being replaced, while those making the other estimates were positive that a new frame was required together with several other expensive parts which Sweatman had failed to observe as being damaged.

For reversal it is first contended that appellees breached the insurance contract by refusing to allow appellant to repair the truck. The undisputed facts refute this contention and show that appellees agreed for appellant to make the repairs, even after the latter had directed Robinson to make them, but that appellant failed to live up to its part of the agreement. It is undisputed that the wrecked truck was still in Robinson's Garage on March 5, 1951, which was approximately 20 days after the appellant had agreed to take

it to Tulsa and have it repaired. The trial court doubtless concluded from the testimony that appellant had itself breached the insurance contract and failed to perform under its election to repair the truck. There is ample evidence to support the conclusion that appellant was afforded full opportunity to repair the truck but failed to do so. Under these circumstances, appellant's plea that it was refused permission to repair the truck is of no avail. Appleman, Insurance Law and Practice, § 4003. Where the insurer elects to make the repairs, there is an implied obligation to perform within a reasonable time. *Ibid*, § 4004. According to the undisputed testimony, appellant failed to meet this obligation.

Appellant's further contention that the judgment is excessive because it was not given credit for the deductible sum of $250 is likewise without merit. We think it is clear from the judgment that the trial court allowed recovery under the Robinson estimate of $2,500, plus the tire damage of $104 and wrecker service of $130, less the $250 deductible under the insurance contract. This was the amount sued for and there is ample evidence to support the judgment. It would be difficult to understand how the trial court could have reached any other conclusion under the testimony here presented.

Affirmed.