William C. FORREST *v.*
GENERAL INSURANCE COMPANY OF AMERICA

CA 94-87                                              890 S.W.2d 612

Court of Appeals of Arkansas
Division I
Opinion delivered December 28, 1994
[Rehearing denied January 25, 1995.*]

*Keith Blackman*, for appellant.

*Butler, Hicky & Long*, by: *Fletcher Long, Jr.*, for appellee.

JOHN B. ROBBINS, Judge. Appellant's airplane was insured under a policy issued by appellee, General Insurance Company of America, when it sustained damage during a wind and hail storm. The insurance policy provided in part:

> In the event of partial loss, the Company's liability, when repairs are made by the Insured shall not exceed the actual cost less discounts, if any, of parts and materials of a like kind and quality plus the actual cost to the Insured of labor (with no additional for overhead or overtime) plus fifty percent (50%) of such labor costs . . . .

Appellant obtained two estimates for the repair of his airplane. Sharp Aviation's estimate was $10,058.92, and Mid-Continent Aircraft's estimate was $10,197.93. At the request of appellee's adjuster, appellant obtained a third estimate from Razorback Fabrics, Inc., for $5,819.71.

The parties were unable to reach a settlement of appellant's claim because appellant did not want to have his plane repaired by Razorback, and appellee refused to pay more than the $5,819.71 Razorback estimate less his deductible. Appellant claimed that he had used Razorback for repair work in the past and the repairs cost a third more than the estimate he had been given and that Razorback was very slow to complete the repairs. Appellant's subject loss occurred during peak aerial application time, and appellant maintained that he needed his plane repaired as quickly as possible.

Appellant had his plane repaired by Sharp Aviation for $10,118.64 and then sued appellee for his cost of repairs, penalties, interest, attorney's fees, and punitive damages because of appellee's bad faith in attempting to force a settlement on him. Appellee responded that its liability did not exceed the Razorback estimate and that appellant's complaint should be dismissed because appellant did not comply with the terms of the policy which required a written proof of loss.

Appellant testified that he had some work done by Razorback to his plane in late 1989 at a quoted estimate of $7,500.00. It stated that the final bill was over $10,000.00 and that it took Razorback three months to make the repairs. He stated that he told appellee's adjuster that he was concerned about the amount of

time it would take Razorback to repair his plane. He stated that his loss occurred during peak aerial application time and he needed his plane repaired quickly. He stated that Razorback told him it was going to be slow and their estimate was a minimum of one week to locate and get the parts and a minimum of two weeks after that to finish the repair. He stated it would have taken Razorback four weeks to rebuild his wing, whereas Sharp Aviation was able to replace it in one week and the cost was about the same. On cross-examination, appellant also testified that he was not totally satisfied with the quality of work Razorback had previously performed but that they did what he considered an average job.

Dale Sharp testified that he owned and managed Sharp Aviation and he has been a licensed mechanic and in the business for eighteen years. He described the damage to appellant's airplane and the repairs that Sharp Aviation made to it. He stated that, in order to save time, he replaced the wing with a rebuilt wing rather than repairing the wing itself. He also testified that he had some personal experience with Razorback Fabrics when his own plane sustained wind damage in 1989 or 1990 and that Razorback's estimate was so low that he knew Razorback could not possibly repair it. He also stated that Razorback told him it would take at least ninety days to repair his aircraft.

Appellant rested at the conclusion of this testimony, and appellee moved for a directed verdict, which was granted by the trial court. A judgment was entered, awarding appellant $5,319.71 plus interest at 4% per annum from the date of the judgment. On appeal, appellant contends that the trial court erred in directing a verdict for appellee. We agree.

■ The insurance policy provided: "The Company's liability . . . shall not exceed the actual cost less discounts . . . ." Appellee argues that the Razorback estimate of $5,819.71 is the actual cost of repairs; however, there was also evidence from which a jury could have found it was not a reliable estimate. Appellant testified that, on a previous occasion, the cost of Razorback's repairs had exceeded the amount of its estimate by 30%. Dale Sharp of Sharp Aviation testified that the cost of repairing appellant's plane was $10,118.64. There was also testimony that Mid-Continent Aircraft had estimated the cost of repair as being approximately $50.00 more than the estimate of Sharp Aviation.

Because the evidence was in dispute on this point, a question was presented for the factfinder to determine. *See First Marine Ins. Co. v. Booth*, 317 Ark. 91, 96, 876 S.W.2d 255 (1994); *Insureds Lloyds v. Mayo*, 244 Ark. 802, 804-05, 427 S.W.2d 164 (1968); *Southern Farm Bureau Cas. Ins. Co. v. Gaither*, 238 Ark. 50, 52, 378 S.W.2d 211 (1964); *Motors Ins. Corp. v. Lopez*, 217 Ark. 203, 207, 229 S.W.2d 228 (1950); *Home Ins. Co. v. Williams*, 201 Ark. 460, 467, 145 S.W.2d 743 (1940).

██ Moreover, contrary to appellee's assertion, the factfinder should have been allowed to consider the time it would take to repair the airplane in determining whether an estimate was reasonable. In *Resolute Insurance Co. v. Mize*, 221 Ark. 705, 711-12, 255 S.W.2d 682 (1953), the supreme court held that an award was not limited to the lowest estimate where the lowest estimate was from a concern in a distant city. If the insurer elects to make repairs, there is an implied obligation to perform within a reasonable time. *Accord Resolute Ins. Co. v. Bailey*, 221 Ark. 419, 423, 253 S.W.2d 771 (1952). Here, there was evidence that, in the past, Razorback had taken as long as three months to repair appellant's plane.

██ In determining whether a directed verdict should have been granted, the appellate court views the evidence in the light most favorable to the party against whom the verdict is sought and gives it its highest probative value, taking into account all reasonable inferences deducible from it. *Mankey v. Wal-Mart Stores, Inc.*, 314 Ark. 14, 16, 858 S.W.2d 85 (1993). A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict, and where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *Id.*

Giving appellant's evidence its highest probative value, we find that appellant presented substantial evidence to dispute the Razorback estimate as the actual cost of his damages and that this issue should have been decided by the factfinder. We therefore reverse the award and remand for trial.

Reversed and remanded.

PITTMAN and COOPER, JJ., agree.