ROBINSON *v.* STATE.

Opinion delivered June 11, 1928.

*Stewart & Oliver,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

SMITH, J. Appellant was tried upon an indictment charging him with the crime of murder in the first degree, which was alleged to have been committed by striking and beating J. H. Brock with a certain blunt instrument, the true nature of which was to the grand jury unknown, and he was found guilty of the crime charged, and from the judgment of the court imposing the death penalty is this appeal.

For the reversal of the judgment it is first insisted that the indictment was demurrable, because it was not signed by the prosecuting attorney.

It is customary for the prosecuting attorney to sign indictments, and it is certainly the better practice that he should do so, but, in the case of *Watkins* v. *State,* 37 Ark. 370, it was held that "an indictment need not be signed by the prosecuting attorney. It is sufficient if found by the grand jury and indorsed by their foreman" (Citing authorities).

It is next objected that the indictment does not allege that Brock was dead. The indictment does charge, however, that defendant "did kill and murder one J. H. Brock," and this allegation sufficiently alleges the death of the person charged to have been killed. *Fisher* v. *State,* 109 Ark. 456, 160 S. W. 210.

It is next objected that the indictment did not allege that deceased died within a year and a day after the infliction of the wound, but in the case of *Fisher* v. *State, supra,* it was said: "Neither was it defective in failing to specifically allege that the deceased died within a year and a day after the infliction of the wound. It is true our statute (Kirby's Digest, § 1774) provides that, in

order to make the killing murder or manslaughter, it is requisite that the person injured die within a year and a day after the wound was given, but, under other statutes, stating what indictments shall contain and providing that none is insufficient for 'any defect which does not tend to prejudice the substantial rights of the defendant on the merits,' it is immaterial that no specific allegation is made of the death resulting within such time after the mortal wound, since murder has a technical meaning, and, when it is sufficiently alleged in the indictment, the defendant is put upon notice that death resulted within the time specified by law to make the offense of that grade'' (Citing authorities).

Error is assigned in the admission of certain testimony of witness Carl Burley. This witness testified that he was the night fireman at a sawmill at which he and deceased were employed; that deceased was a clock puncher, or night watchman, and was required, as such, to punch twelve clocks, one each hour; that, after making his rounds punching the clocks, deceased was accustomed to return to the boiler room, where witness was employed. Deceased made one of these rounds shortly after ten o'clock P. M., and failed to return. Witness knew that deceased usually carried considerable money with him, and, a night or two before the killing, witness saw deceased count his money, which amounted to $310. After waiting awhile for deceased's return, witness took a lantern and went in search of him. He found on the tram a pool of blood, and about sixteen feet away he found deceased's body. Deceased was not then dead, but was groaning in agony, as he had been struck twice over the head with some blunt instrument. Deceased was not conscious, and did not regain consciousness before his death, which occurred at the hospital, where he was taken after an alarm was given. Witness testified that the appearance of the tram indicated that deceased's body had been dragged along the tram about sixteen feet to an opening between two piles of lumber, where the body was thrown off the tram.

There was no error in the admission of this testimony. The statement that the body had been dragged from the place where the pool of blood was discovered was not the expression of an opinion, but the statement of a physical fact; but, if it were a mere opinion, there could be no prejudice in it. Deceased was struck and killed. Some one murdered and robbed him. The pool of blood was at one place and the body was sixteen feet away, and it could not be material whether the body was dragged from one place to the other. The witness Burley naturally suspected that robbery was the motive of the crime, and a search of the body by him disclosed that the roll of money which deceased was known to carry was missing.

Error is assigned in admitting a confession which appellant is said to have voluntarily made. In this confession the details of the revolting crime were told. Shortly after the killing, appellant was seen spending money freely, and, when arrested, he gave a false explanation of his possession of the money he had on his person. In his confession appellant told where he had hid the balance of the money, which was found at the place named by him, and among other bills there were found two twenty-dollar gold certificates of the kind deceased was known to have had on his person.

The testimony on the part of the State was to the effect that the confession was freely and voluntarily made, and there was no testimony to the contrary, except that of another negro, who had been arrested along with appellant, but who was later released. This witness testified that he and appellant were separately questioned by the officers at the jail, but he did not testify that he or appellant had been threatened or coerced, or otherwise intimidated, or that a promise of any kind was made to him or appellant. Appellant himself did not testify.

In regard to this confession the court charged the jury as follows:

"1. The court instructs the jury that, before any admission or statements made by the defendant can be

used against him as evidence, such statements or admissions must have been freely and voluntarily made, and where such statements, if any, are induced by threats of harm, promises of favor, or show of violence, or inquisitorial methods are used to extort a confession, then the same is attributed to such influence, and cannot be used against the defendant; and if the jury shall believe that any such threats or promises were made, or violence shown or manifested, or methods used, the jury will not consider or give any weight to such admissions or statements of the defendant.''

This was a proper instruction, and conforms to the correct practice in such cases. *Spurgeon* v. *State,* 160 Ark. 112, 254 S. W. 376.

This confession, in connection with the other testimony in the case, is sufficient to sustain the conviction. Section 3182, C. & M. Digest.

It is finally insisted that the court erred in refusing to give an instruction defining the crime of manslaughter. No error was committed in refusing this instruction, as there was no testimony upon which to base it. In the case of *Clark* v. *State,* 169 Ark. 717, 276 S. W. 849, it was said that this court has repeatedly held that, where an indictment charges murder in the first degree, and the undisputed evidence shows that the accused, if guilty at all, is guilty of that crime, it is not error to refuse to give an instruction authorizing the jury to return a verdict of guilty of any of the lower degrees of homicide, and the reason there stated was that, ''if there is no evidence to establish a lower degree of homicide than murder in the first degree, the court, in properly giving the law, must of necessity determine whether there is any evidence at all to justify a particular instruction, and it is the duty of the jury to take the court's exposition of the law'' (Citing authorities).

As no error appears, the judgment must be affirmed, and it is so ordered.