CAIN *v.* STATE.

Opinion delivered April 13, 1931

J. H. O'Neal, Sheffield & Coates, Winstead Johnson and S. S. Hargraves, for appellant.

Hal L. Norwood, Attorney General, and Pat Mehaffy, Assistant, for appellee.

HART, C. J. G. O. Cain prosecutes this appeal to reverse a judgment of conviction against him for the crime of accessory before the fact for assault with intent to kill, charged to have been committed by advising and encouraging O. H. Lindsey to shoot W. N. Gregory with the intent to kill and murder him.

It is first insisted that the judgment should be reversed because the special term, at which Cain was indicted and convicted, was not called in the manner prescribed by statute. The jurisdictional requirements in calling a special term are: that the person to be tried is confined in jail upon a criminal charge; that the holding of the special term shall not interfere with any other court to be held by the same judge; that the special term shall not be held within twenty days of a regular term of the court; and that the order calling the term of court shall be made out and signed by the judge and entered on the records of the court. Crawford & Moses' Digest, § 2218 et seq.; and Sease v. State, 155 Ark. 130, 244 S. W. 450.

The order of the circuit judge calling the special term in the instant case was filed with the clerk of the circuit court on the first day of October, 1930, and was entered of record by him. The special term was called for October 20, 1930, but it is insisted that the record does not contain an affirmative recital that notice was served on the prosecuting attorney ten days before the commencement of such special term as provided by § 2220 of the Digest. The statute does not require that the record should show that the notice was given to the prosecuting attorney, but the court will presume that it was given unless the contrary was shown. Dixon v. State, 29 Ark. 165; and Hill v. State, 100 Ark. 373, 140 S. W. 576.

As we have just seen, the order for the special term was filed with the clerk of the court in ample time to have had the notice required by statute served upon the prosecuting attorney. The main object of giving the notice is to enable the prosecuting attorney to be present at the special term of the court. The record in the present case shows that the prosecuting attorney signed the indictment which was returned against Cain at the special term and that he was present and conducted the trial for the State at said special term. Therefore, we hold that this assignment of error is not well taken.

It is next contended that the judgment should be reversed because the court erred in refusing the defendant a change of venue. Section 3087 of the Digest provides that any criminal cause pending in any circuit court may be removed to the circuit court of another county whenever it shall appear in the manner hereinafter prescribed that the minds of the inhabitants of the county in which the case is pending are so prejudiced against the defendant that a fair and impartial trial cannot be had therein. Section 3088 provides that the order of removal shall be made upon the petition of the defendant, verified by affidavit, supported by the affidavits of two credible persons who are qualified electors, actual inhabitants of the county, and not related to the defendant in any way.

It is only in special cases that this court will reverse the decision of the trial court as to change of venue. The reason is that the question whether the minds of the inhabitants are so prejudiced against the defendant that a fair and impartial trial cannot be had in that county is of necessity one of opinion, and, as such, addresses itself to the sound discretion of the trial court who occupies a much better position than we do to judge of the credibility of the supporting affiants to the prejudice existing against the defendant which will prevent him receiving a fair trial. *Adams* v. *State,* 179 Ark. 1047, 20 S. W. (2d) 130.

There were three supporting affiants to the petition of the defendant for a change of venue. One of them

stated that he did not know anything about the sentiment of the inhabitants of the county as to their prejudice against the defendant. He thought that he was signing an affidavit for the change of venue for a man who was jointly charged with the defendant. Another supporting affiant testified that he did not know anything about the prejudice against the defendant except in Augusta Township, and did not know anything about the sentiments for or against the defendant in the remainder of the Northern District of Woodruff County. If it be conceded that the remaining affiant was a credible person, a question which we do not decide, the court did not err in refusing to grant a change of venue because there were not two supporting affiants as required by statute.

The next assignment of error relates to the admission of evidence against the defendant. Counsel for the defendant do not specifically set out this testimony, but it relates to the declaration of O. H. Lindsey and another person who the evidence shows to have conspired with the defendant to perpetrate the crime for which the defendant was tried and convicted. It is well settled that any act or declaration made by one of two conspirators in furtherance of the conspiracy, although in the other's absence, may be shown in evidence against him, *Lesieurs* v. *State,* 170 Ark. 560, 280 S. W. 9, and cases cited. All of the testimony complained of by the defendant was concerning the acts and declarations of his co-conspirators in furtherance of their concerted plan to extort money from W. N. Gregory or to take his life.

It is next insisted that the court erred in giving instruction No. 2 at the request of the State, which, it is contended, is in conflict with instruction No. 4, given at the request of the defendant. The two instructions read as follows:

"Instruction No. 2. You are instructed if you believe from the evidence in this case beyond a reasonable doubt that the defendant, G. O. Cain, and O. H. Lindsey did combine and agree to obtain money from W. N.

Gregory by force or intimidation, and that the said O. H. Lindsey, while acting in pursuance of said combine and agreement and while proceeding according to the common plan of the two, did assault the said W. N. Gregory with intent to kill him, at a time when the defendant, G. O. Cain, was not actually aiding and abetting the said O. H. Lindsey, you will find the defendant guilty as charged in the indictment.''

''Instruction No. 4. You are instructed that before the defendant, Cain, can be convicted you must believe from the evidence beyond a reasonable doubt that there was a specific definite agreement between the defendant, Cain, and O. H. Lindsey to commit the specific crime alleged in the indictment, that Cain advised or encouraged such act on the part of Lindsey, in the Northern District of Woodruff County, Arkansas, and that Lindsey proceeded in accordance with said specific common plan and attempted to kill said Gregory as alleged in the indictment.''

A comparison of the language used in the two instructions will show that they are in harmony with each other and not conflicting in any sense of the word. Instruction No. 2 makes the guilt of the defendant depend upon his acting in pursuance of a combine and agreement with O. H. Lindsey for the latter to assault W. N. Gregory with intent to kill him. Instruction No. 4 tells the jury that there must have been a definite agreement between him and Lindsey to commit the specific crime alleged in the indictment, and that Cain advised and encouraged Lindsey to proceed in compliance with the common plan when he attempted to kill Gregory. Hence we hold that this assignment of error was not well taken.

It is next contended that the court erred in its rulings with regard to receiving the verdict. The jury returned a verdict finding the defendant guilty as charged in the indictment and fixed his punishment at five years in the penitentiary. Whereupon the court amended the verdict so that it reads as follows:

"We, the jury, find the defendant guilty of accessory before the fact of assault with intent to kill as charged in the indictment and fix his punishment at 5 years in the penitentiary."

The court then read the verdict as modified to the jury; and each juror, after his name was called by the clerk, was asked if this was his verdict, and each one answered that it was. As said in *Gilchrist* v. *State*, 100 Ark. 330, 140 S. W. 260, to hold that this was reversible error would be to put form above substance. Each member of the jury answered that the amended verdict was his own. The indictment returned against the defendant was for the crime of accessory before the fact for assault with intent to kill, charged to have been committed in advising and encouraging O. H. Lindsey to kill W. N. Gregory. There can be no doubt by comparing the original verdict with the one amended by the court that the jury intended to find the defendant guilty of the crime of accessory before the fact of assault with intent to kill. Therefore, we hold this assignment of error is not well taken.

The most serious question in the case is whether or not there was sufficient corroboration of the testimony of O. H. Lindsey to warrant the jury in finding the defendant guilty; and, in determining this assignment of error, we have carefully considered the whole testimony, although we shall attempt to set out here only the substance of it. According to the testimony of W. N. Gregory, he lived in Augusta, Arkansas, and on Sunday night about eight o'clock on the 21st day of September, 1930, he was sitting with members of his family on his front porch when O. H. Lindsey came up to the steps and told him that he wanted to talk to him privately. Gregory was well acquainted with Lindsey, and on the night before had refused to lend him $150. On the Sunday night in question, however, Gregory went out and took a seat in the car with Lindsey; and, after refusing to go to a private place with him, Lindsey demanded of Gregory $25,000. Gregory refused to let him have it.

Lindsey asked Gregory if his young son hadn't gone to the air school in Little Rock and received a telephone call from some one a few nights before. Gregory said that he did not know anything about this, but Lindsey said that it was true. Lindsey then told Gregory that he was going to have $25,000. Gregory refused to let him have it. Lindsey pulled out a pistol and threatened Gregory with it. Gregory tried to distract his attention by talking to him. Gregory did distract Lindsey's attention, so that he turned the gun to one side a little, and Gregory then grabbed the cylinder in his hand and threw the pistol towards the front of the car. Lindsey shot one time, and Gregory pushed him out of the car and jumped on him and scuffled with him. Gregory's wife and others came up and assisted him in arresting Lindsey who was then carried to jail. On the Friday before the assault, Gregory, who had just returned from Little Rock, drove out to the airport at Augusta and there watched his son fly his airplane. When Gregory started to leave the airport, some one stopped him and asked him if his name was Gregory. The man said he would like to have a talk with Gregory; that he knew something that would be of interest to him. The man asked Gregory if he had a boy in Little Rock in the air school, and, upon receiving an affirmative answer, said that he got a 'phone call, didn't he. Gregory replied that he did. The man then said that he knew where the 'phone call came from. He said further: "It's a blackmail. I know of a blackmail plot against you." Gregory asked what it would cost him. The man replied: "Well, it is for $100,000, and I think $5,000 ought to be plenty." Gregory asked him what about $2,500. The man replied, "No, that wouldn't do, there might be a killing in it somehow," and he had to have more money to get out of the way. The man then made an appointment with Gregory to meet him at the office of an attorney in Memphis a few days thereafter. The man was at the time unknown to Gregory, but he recognized the defendant as the man with whom he had the conversation.

O. H. Lindsey turned State's evidence and related in detail how the defendant, G. O. Cain and Thomas McCloud and himself had formed the plan somewhere in Mississippi during the summer of 1929 to extort a large sum of money from W. N. Gregory. Pursuant to this plan, the parties conferred together at various times which resulted in them meeting at Searcy, Arkansas, where Lindsey had opened a barber shop and planning to obtain money from W. N. Gregory of Augusta. They first formed the plan of kidnapping the son of W. N. Gregory, who was a student at the airport in Little Rock. Lindsey became intoxicated while they were in Little Rock, and this plan fell through. They next met in Woodruff County, Arkansas, and devised a plan whereby Lindsey was to make a demand upon Gregory at his home in Augusta for $25,000, and, if he refused, to kill him. Lindsey specifically stated that the defendant and others told him to go down there to Augusta and make Gregory sign the check or to kill him. Lindsey testified that it was a definite understanding between the defendant and himself and their associates that they were to kill Gregory if he did not pay as required.

The evidence of other witnesses tended to show that the defendant had registered at the Hotel Mayfair in Searcy, as testified to by Lindsey, and that he was in this State for several days in company with Lindsey before the assault was committed by Lindsey. After Lindsey was arrested, he made a confession, and the defendant was arrested in Memphis.

After they were on the train in Arkansas, the deputy sheriff told Cain about the newspaper account of the assault. Cain asked the deputy sheriff if he had one of the papers on the train and remarked that Lindsey had squealed. The deputy sheriff said that Lindsey had told the whole thing. Cain then said, "You didn't tell me that in Memphis."

Lindsey told in detail of the circumstances leading up to the assault, and the jury was warranted in finding that it was a part of their plan to

extort a large sum of money from W. N. Gregory at Augusta, Arkansas, or to kill him upon his refusal to pay them. There was a definite and concerted plan participated in by Lindsey, Cain, and Thomas McCloud to commit the crime in question. We think the fact that Lindsey and the defendant were in company with each other for several days before the commission of the crime, coupled with the admission of the defendant to the deputy sheriff that Lindsey had squealed, and the further fact that Gregory testified that a few days before the assault was made on him by Lindsey a man whom he identified as the defendant approached him at the airport in Augusta and told him that there was a plan on foot to blackmail him and thereby secure from him a large sum of money, was sufficient corroboration of the testimony of Lindsey as required by our statute. *Middleton* v. *State*, 162 Ark. 530, 258 S. W. 995.

We find no reversible error in the record, and the judgment will therefore be affirmed.