CLAYTON *v.* STATE.

Crim. 3944-3945

Opinion delivered November 18, 1935.

*John R. Thompson* and *Jno. A. Hibbler*, for appellants.

*Carl E. Bailey*, Attorney General, *J. Hugh Wharton* and *Ormand B. Shaw*, Assistants, for appellee.

McHANEY, J. Appellants, Clayton and Caruthers, negro men, aged 21 and 19 years, respectively, were convicted of the crime of rape, committed on the person of Vergie Terry, a white woman aged 19, on the night of December 21, 1934, near a cemetery in the suburbs of the city of Blytheville, Arkansas. They were sentenced to death in the electric chair. They were separately indicted, but tried jointly.

For a reversal of the judgment of conviction and sentence, a number of errors are assigned and argued, among which are the following:

1. That the court erred in refusing to quash the indictments against them on their motion because: (a) They were not signed by the prosecuting attorney himself or his deputy. It has never been the law in this State that the signature of the prosecuting attorney to an indictment is necessary to its validity. On the contrary, it has been continuously held that such signature is not necessary. *Anderson* v. *State,* 5 Ark. 444; *Watkins* v. *State*, 37 Ark. 370. An indictment is not demurrable because not signed by the prosecuting attorney, though it is customary and better practice for him to do so. *Robinson* v. *State,* 177 Ark. 534, 7 S. W. (2d) 5. (b) Because, as it is said, they were denied the privileges and immunities guaranteed them under the Constitution in that no negroes were on the grand or petit jury, which was a discrimination against them on account of their race or color in violation of the "due process clause" of

the 14th Amendment. There is nothing in this record tending in any way to show that there were no negroes on the grand jury that indicted them, or on the petit jury that tried them. No objection was made to either jury on this account, nor was such a ground alleged in the motion to quash the indictment, nor was any motion made to quash the trial panel on this or any other ground. It was not even mentioned as a ground in the motions for a new trial. This question is raised for the first time in the brief for appellants, without any record to support it. It cannot be considered. Even though raised in the motion for a new trial for the first time, such assignment comes too late. *Hicks* v. *State*, 143 Ark. 158, 220 S. W. 308.

2. That the court erred in refusing to change the venue on their petition. The statute (§ 3088, Crawford & Moses' Digest) provides the requirements to effect a change of venue, among which are that the petition "be supported by the affidavits of two credible persons, who are qualified electors, actual residents of the county and not related to the defendant in any way." The petition in this case was supported by the affidavit of only one person, and was properly overruled, no matter how credible the affiant was, because not in compliance with the statute. *Davis* v. *State*, 170 Ark. 602, 280 S. W. 636; *Adams* v. *State*, 179 Ark. 1047, 20 S. W. (2d) 130; *Cain* v. *State*, 183 Ark. 606, 37 S. W. (2d) 708. The statements of counsel for appellants at the trial as to the reason why he could not get another or other affiants cannot supply the omission.

3. That the evidence is insufficient to support the verdicts and judgments against them. In considering this assignment, we must view the evidence in the light most favorable to the State, and if, when so viewed, there is any substantial evidence to support the verdict, we must permit it to stand. It is earnestly insisted, both in the original brief and in the supplemental brief on behalf of the appellants, that the evidence of the alleged rape was incredible, and that the identification of the appellants was unsatisfactory. Incredible and unsatisfactory to whom? The jury is the judge of the credibility

of the witnesses and the weight to be given their testimony. These are questions for the jury and not for this court if, as above stated, there is substantial evidence to support the verdict. The prosecuting witness, Vergie Terry, testified very positively that she was raped by both appellants on the night of December 21, 1934; that she and Wiley Bryant were sitting in a parked car near Sawyer's graveyard, about a mile and one-half southeast of Blytheville; that they were parked on a road running north and south near the intersection of another road running east and west; that, while so parked and she and Bryant were sitting in the front seat, two negroes passed going south, and in about ten minutes they came back with flashlights in their hands and each with a pistol; that they ordered them to get out of the car and one of them fired a shot into the car and one of them struck Bryant over the head with a flashlight; that they forced Bryant to get down into a ditch and the smaller of the two held a gun on him and the other ordered her to get into the back seat of the car where he forced her to submit to his fiendish passions; that the larger of them guarded Bryant while the smaller one forced her again to submit to him. She identified appellants as being the two men who committed the rape. This evidence was fully corroborated in all respects by Wiley Bryant. She further testified that, while in the act of raping her, she saw the face of each, both by the light of the moon and by the light of a passing automobile. When appellants were first arrested, they were not suspected of this crime, but it was thought that they were the ones who had recently shot the sheriff. They were threatened with mob violence, and the officers removed them to Memphis and from thence to the penitentiary for safe-keeping. While in the penitentiary, Vergie Terry and Wiley Bryant were taken there by the officers to see whether they could identify these appellants as the parties who had committed the rape. They both testified that they recognized them immediately. They identified them again in the court room. Both Vergie Terry and Wiley Bryant testified that the negroes had two flashlights and that they wore handkerchiefs over their faces. Vergie Terry said that

they were white handkerchiefs and that one had a colored border. Appellant Caruthers' automobile was found parked out near where the sheriff was shot. In the car they found a forty-five caliber pistol hidden under the upholstering of the back seat. Two caps were found under the cowling in the car and over a heater and two handkerchiefs were found in the pocket of the car, one of which had been folded in a three-cornered shape and twisted on each end as if it had been tied. Two flashlights were also found in the car. These are circumstances for the consideration of the jury which are not without weight. It was testified that the rapists wore caps on the night the crime was committed and had flashlights, pistols and handkerchiefs over their faces. This testimony tends to corroborate the identification of the appellants by the victims. Appellants denied that they were the ones that committed the crimes and attempted to prove an alibi. The jury refused to accept their testimony as true. We cannot say that there is no substantial evidence to support this verdict. On the contrary, it is quite substantial, and we must permit the verdict and judgment to stand.

4. That the court erred in permitting the prosecuting attorney to question the defendants on other unrelated crimes. We have examined this assignment very carefully and find it without merit. The rule in this State with reference to the cross-examination of the accused, touching his credibility, in relation to other crimes is stated in *Kennedy* v. *Quinn,* 166 Ark. 516, 266 S. W. 462, and recently quoted in *Morrison* v. *State, ante* p. 720, as follows:

"We have frequently and recently decided that a witness cannot be interrogated on his cross-examination for purpose of impeachment concerning indictments or mere accusations of crime. He may be asked if he was guilty or was convicted, but he cannot be asked if he was indicted or accused." An examination of the questions asked by the prosecuting attorney on cross-examination of appellants related to their guilt, or whether convicted of other crimes. They were not asked about indictments for other crimes or mere accusations of such crimes. For

instance, Bubbles Clayton was asked these questions: "Part of your occupation has been stealing, hasn't it?" "You hi-jacked Mr. Frank and Miss Hutchins on November 18 and shot her, didn't you?" Similar questions were asked appellant Caruthers. These were questions relating to actual guilt or guilty knowledge and not to indictments or mere accusations. This was proper cross-examination under the rule announced and we so hold it here. These are all of the assignments which we deem of sufficient importance to justify a discussion thereof. We have carefully examined all of the assignments of error, and find them without substantial merit.

It follows that the judgments must be affirmed, and it is so ordered.

McHANEY, J., (on rehearing). Appellants make a very strong argument that we erred in holding there was substantial evidence to support the verdict. But what we said in the original opinion, to which we adhere, answers this contention. It was a question of fact for the jury, and it is the settled rule of this court, announced in hundreds of decisions, that it is not our province to set aside the verdict of the jury supported by substantial evidence. We think the evidence is substantial, direct and positive, and was a question for the jury's determination and not ours.

The only other question raised in the brief on rehearing which calls for discussion is that this court erred in affirming death sentences based upon the following verdicts: "We, the jury, find the defendant, Jim X. Caruthers, guilty as charged in the indictment, and fix his punishment at death by electrocution. Ike Miller, foreman." A like verdict was rendered in the case of Bubbles Clayton.

It is urged that, since an indictment for rape includes also a charge of carnal abuse, a charge of incest and a charge of assault with intent to rape, that the above verdicts were defective in failing to find the particular offense, with which appellants were charged. Had the verdicts in these cases simply found the defendants guilty as charged in the indictment without fixing the punishment, there might be some merit to appellants' conten-

tion. It is true that in the case of *Banks* v. *State,* 143 Ark. 154, 219 S. W. 1015, on a charge of murder in the first degree, the verdict read: "We, the jury, find the defendants, John Martin and Alf Banks, Jr., guilty as charged in the indictment," this court held that the verdict was so fatally defective that no judgment could be rendered upon it. So it has been held in a number of murder cases by this court. These decisions were founded on the provisions of the act of December 17, 1838, digested as § 3205 of Crawford & Moses' Digest, which provides: "The jury shall, in all cases of murder, on conviction of the accused, find by their verdict whether he be guilty of murder in the first or second degree; but if the accused confesses guilt, the court shall impanel a jury and examine testimony, and the degree of the crime shall be found by such jury." We have no such statute in relation to the charge of rape, and moreover we are of the opinion that the verdicts rendered in these cases are made definite and certain by the jury in fixing the punishment at death by electrocution. No such punishment could have been inflicted by the jury for any of the lesser offenses. Moreover, this court has several times held that a general verdict, like the one in question is sufficient. In the recent case of *Wallace* v. *State,* 180 Ark. 627, 22 S. W. (2d) 395, the indictment charged the appellant with grand larceny. The jury returned the following verdict: "We, the jury, find the defendant guilty, and fix his punishment at one year, and recommend to the court to suspend his sentence on good behavior." It was contended in that case that the verdict was indefinite, and that it did not show what the defendant was guilty of. In answer to this contention, the court said: "It is true that the verdict must, either in itself or by reference to the indictment or information, contain a finding of every essential element of the crime of which the appellant is convicted. But a *verdict of guilty* implies a finding of every element essential to constitute the crime as charged, and it need not state the specific crime, it being sufficient that it finds the defendant guilty as charged in the indictment or information, or that from its language as a whole no doubt can arise as to the

offense of which the accused is convicted.'' Citing 16 C. J. 1109; *Porter* v. *State,* 57 Ark. 267, 21 S. W. 467. Continuing, the court said: ''It is only in cases of murder that the statute makes it necessary for the jury to state in their verdict the degree of crime.'' The court then quoted § 3205, Crawford & Moses' Digest, regarding verdicts on indictments for murder, and said: ''But there is no such requirement in indictments for other felonies.'' See also *Gribble* v. *State,* 189 Ark. 805, 75 S. W. (2d) 660.

The petition for rehearing is therefore denied.