SMITH *v*. STATE.

Crim. 4030.

Opinion delivered May 31, 1937.

*J. Loyd Shouse,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Asistant, for appellee.

MEHAFFY, J. The appellant, O. O. Smith, was indicted and tried in the Boone circuit court for murder in the first degree, and was convicted of involuntary manslaughter, and his punishment fixed at one year in the penitentiary. The appellant owned and operated the Ozark Hotel at Harrison, Arkansas, and the deceased, Kirby Clifton, was a farmer living at Western Grove, Newton county, Arkansas. Appellant and de-

ceased had been friends for many years, and deceased usually stopped at appellant's hotel when in Harrison.

On February 19, 1936, the day before his death, Clifton came to appellant's hotel and secured a room for the night. He was assigned a room by appellant. Next morning he left the hotel and was not seen again by the appellant until late that afternoon. He was drinking, and spent part of the day with Jeff Sanders, and about four o'clock in the afternoon Sanders took him to the Ozark Hotel. Sanders, appellant and deceased went to deceased's room in the hotel, and discussed plans for opening a real estate office in Western Grove. Deceased had a bottle of alcohol and all three of them drank from it.

The testimony of Blaine McDougal showed that he was at the appellant's hotel the night the deceased was shot and killed; that he got there about 11:20 and appellant and deceased were the only ones in the lobby; that deceased was sitting in front of the stove asleep, and appellant was behind the stove playing solitaire; that deceased had all of his clothes on, overshoes and overcoat, and was bareheaded; appellant told witness to go upstairs and take room No. 2 which was about ten or twelve feet back from the head of the stairs; that he got ready for bed, smoked a cigarette, and not long afterwards heard an argument start in the lobby; that he had not been asleep. He heard appellant tell deceased to get on out, but did not hear what deceased said. Appellant told deceased to get out, and then said: "You have been here and not been out anything." Deceased said: "If I owe you anything I will pay you." It was not over a half minute until the shot was fired. There was only one shot. Witness lay there a little while and heard a peculiar noise like one in a death struggle and went down. The chair on which deceased had been sitting was sitting in the same place, but was turned over to the right, and deceased's right arm was lying under him. He fell and had a death grip on the chair. The chair went over with him. There was a knife lying in front of him which looked like it had been used to cut

tobacco. Deceased did not use tobacco, and was right-handed. Witness came to the hotel about 11:20, and the first time he noticed the clock after he went down to the lobby it was 11:45. Appellant said he and deceased had been drinking together, and appellant looked like he had been drinking.

Dr. Gladden testified that he was called to the Ozark Hotel the night of the killing. Deceased was on his right side, and sitting in a chair which was turned over. Deceased had a grip with one hand on the chair, and was just about one foot out of the chair. His right hand was gripping the chair. Deceased was right-handed. Deceased was shot through the heart, ranging down in the back about an inch. Death was instantaneous. In witness' opinion if a man has something in his hand and was shot through the heart, he would stay gripped to it. If a man was sitting in a chair and another man shot him standing up, the bullet would come out lower behind.

Lavona Thompson testified that appellant was pretty drunk at supper.

Bud Holland, city marshal, testified that he got to the lobby of the hotel the night of the killing shortly after the shooting; that deceased had been sitting in a chair, and the chair was turned over, and his right hand was under the chair, gripping the chair, and his left hand was over his face.

Deceased's father testified that the deceased did not chew tobacco and was right-handed.

Deceased's son testified that his father was right-handed, and that the knife found by his father's body was a strange knife, one that he had never seen before.

There is some conflict in the testimony. The evidence showed that there were two knives found in deceased's pocket; both of them shut. No one knows where the knife found on the floor came from, or to whom it belonged.

Appellant insists first that there is no substantial evidence to support the verdict of the jury. We do not agree with appellant in this contention. Appellant him-

self testified that the deceased came toward him with a knife and threatened him, and that he ran downstairs and deceased followed him, and when appellant got downstairs to his room he stepped in and got the gun, and thought the deceased was going to kill him, and he shot and killed deceased.

The undisputed facts, however, show that deceased was shot in the heart, and the bullet ranged down, coming out at the back. If the jury believed the evidence of McDougal and Gladden, they were not only justified in convicting appellant, but the evidence of the state witnesses would sustain a conviction for a higher grade of homicide.

The rule is well settled that the evidence adduced at a trial will, on appeal, be viewed in the light most favorable to the appellee and if there is any substantial evidence to support the verdict of a jury, it will be sustained." *Slinkard* v. *State,* 193 Ark. 765, 103 S. W. (2d) 50.

In the trial of cases the facts are to be determined by the jury and not by the court. The jury is the judge of the credibility of the witnesses and the weight to be given to their testimony. Therefore, in testing the legal sufficiency of the evidence to support the verdict, it must be viewed in the light most favorable to the state. *Turnage* v. *State,* 182 Ark. 74, 30 S. W. (2d) 865; *Link* v. *State,* 191 Ark. 304, 86 S. W. (2d) 15; *Clayton* v. *State,* 191 Ark. 1070, 89 S. W. (2d) 732.

It is next contended by the appellant that the court erred in giving instruction No. 2 requested by the state. That instruction is as follows:

"No one in resisting an assault made upon him in the course of a sudden brawl or quarrel, or upon a sudden encounter, or in a combat on a sudden quarrel, or from anger suddenly aroused at the time it is made, is justified in taking the life of the assailant, unless he is so endangered by such assault as to make it necessary to kill the assailant to save his own life, or to prevent a great bodily injury, and he employed all the means in his power, consistent with his safety, to avoid

the danger and avert the necessity of killing. The danger must apparently be imminent, irremediable and actual, and he must exhaust all the means within his power, consistent with his safety, to protect himself, and the killing must be necessary to avoid the danger, if, however, the assault is so fierce as to make it apparently, as dangerous for him to retreat as to stand, it is not his duty to retreat, but he may stand his ground, and, if necessary to save his own life, or to prevent a great bodily injury, slay his assailant.''

The specific objections appellant makes to this instruction are that it is argumentative, second that it is conflicting within itself, third that it is in conflict with other instructions given.

We think the instruction given is correct. It is not argumentative, it is not conflicting within itself, and it is not in conflict with any other instruction. Moreover, numerous instructions were given at the request of the appellant, which fully instructed the jury as to the law in the case, and there was no error in giving instruction No. 2.

The appellant next urges a reversal because of alleged improper conduct of the jury. Appellant says that the jury was directed by the court to be held together in one body, and that they should not communicate with outside persons, and remain in charge of the sheriff until their final report and discharge by the court. It is alleged that the jury was permitted to separate, mingle with outside persons, sleeping in different houses, free from the charge of the sheriff. The appellant, however, says, ''We doubt, under law, and under the record here, whether this was prejudicial.''

The evidence showed that the sheriff kept the jury in the City View Tourist cabins, near the city limits. The jury occupied three different cabins, all near each other, and had breakfast at Aker's cafe, in town.

Section 3190 of Crawford & Moses' Digest is as follows: ''After the cause is submitted to the jury they must be kept together in charge of the sheriff, in the room provided for them, except during meals and

periods for sleep, unless they may be permitted to separate by order of the court. Suitable food and lodging must be provided by the sheriff and the expense paid by the county.''

It clearly appears from this section that the jurors are not to be kept together during meals or periods for sleep. There was no error in permitting them to occupy separate cabins. Moreover, the evidence conclusively shows that the jury did not communicate with outside persons, and that nothing occurred to influence them in any way.

But it is urged that one of the jurors was permitted to approach the court and ask some questions about the law, and appellant urges that this was in violation of § 3192 of Crawford & Moses' Digest, which provides:

''After the jury retires for deliberations, if there is a disagreement between them as to any part of the evidence, or if they desire to be informed on a point of law, they must require the official to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, counsel of the parties.''

The sheriff, Ernest Rogers, testified that one of the jurors, Frank Andrews, requested him to let him leave the remaining eleven and let him come into the court room and see the court, and the sheriff permitted him to do this. This was after they had come back from the tourist camp and were at the court house. The sheriff permitted him to separate from the other eleven and go into the court room. The court was not busy, but was on the bench. He saw the juror talking to the judge, but he does not know what was said. After the conversation the court permitted the juror to return to the jury room. When the sheriff brought the juror into the court room Mr. Walker was in the prosecuting attorney's office and came into the court room before Mr. Andrews, the juror, returned to the jury room. Mr. Walker is a partner in the firm of Shouse & Walker, and while the testimony shows that he did not actively participate in the trial, yet it is admitted that he sat at

the counsel table with the other attorneys for appellant, assisted in selecting the jury, and the court and prosecuting attorney evidently regarded him as one of appellant's attorneys. He saw the juror in the court room, made some remark about it, and asked what it was about. He did not request that the entire jury be brought in, and the conversation repeated in their presence. This request was not made at any time by appellant's attorneys. The testimony of all the jurors shows that nothing occurred at any time after they were elected as jurors to influence them in any way. There was no communication between them or any one of them and outside persons. There is in fact no claim made by the appellant that anything was done or said at any time to influence their verdict. It is only contended that the sheriff, permitting one juror to separate from the others and go into the court room, violated the statute, and for this reason it is urged that the judgment should be reversed.

Appellant cites and relies on *Pearson* v. *State,* 119 Ark. 152, 178 S. W. 914, and *Kinnemer* v. *State,* 66 Ark. 206, 49 S. W. 815. It is true that the statute was enacted to protect the defendant on trial and the trial court should be extremely cautious not to permit anything to be done to prejudice the defendant. If the jurors are permitted to separate and one of them communicates with the court and the court gives any instruction, the presumption would be that it would be prejudicial. However, this court has stated that this error may be waived either by the defendant or his attorney.

In the case of *Scruggs* v. *State,* 131 Ark. 320, 198 S. W. 694, this question was discussed at great length. In that case the court instructed the jury in the absence of the defendant. They came into the court room after they had deliberated for some time, and requested the court to re-read the instructions. The court then read all the instructions that it had previously given to the jury, but did not give any additional instructions. The defendant was not in the court room, but his attorney was present. The attorney did not request the presence

of the defendant and did not object to the instructions being re-read to the jury in his absence. He did, however, save his exceptions, making both general and special objections on the ground that the instructions were wrong in certain respects. The court then said, in discussing the case of *Kinnemer* v. *State,* 66 Ark. 206, 49 S. W. 815:

"In that case the court re-read the instructions exactly as first given to the jury. The defendant was not present when this was done and the record does not show that even his counsel was present. The court held that the re-reading of the instructions was tantamount to instructing the jury originally and that it was error to do so in the absence of the defendant. It is true the court said that even had the record showed affirmatively the presence of defendant's counsel that his counsel could not have waived his presence while the jury was being instructed. This language was not necessary to the decision of that case and the decision must be considered with reference to the facts of that particular case. Hence that case can not be taken as an authority that the presence of the defendant can not be waived by his counsel. There are authorities to the effect that the presence of the defendant at his trial can not be waived by his counsel, but we need not consider these cases for this court has taken the contrary view. It is well settled in this state that the defendant has a right to be present during the whole of his trial when any substantive step is taken, but in the case of *Davidson* v. *State,* 108 Ark. 191, 158 S. W. 1103, Ann. Cas. 1915B, 436, it was held that when the record shows that counsel acted for the accused in waiving his right to be present at the rendition of the verdict, it will be presumed, in the absence of a showing to the contrary, that they had authority from the accused to waive that right. The right to be present at every stage of the trial is a personal right limited to criminal prosecutions and is not a jurisdictional limitation upon the authority of the court because it secures simply a personal right of the defendant and in no manner affects the jurisdiction of

272

the court. It may be waived by the defendant himself.''
*Scruggs* v. *State, supra.*

This court has uniformly held that it is not necessary for the accused to show that he was actually prejudiced by the ruling of the court in his absence. However, we recently said:

''But we have, also, uniformly held that a cause will not be reversed where a ruling is made by the trial court in the absence of the defendant that could not by any possibility result in his prejudice.''· The court, also, said, quoting from *Mabry* v. *State,* 50 Ark. 492, 8 S. W. 823: ''We do not depart from the rule that the probability of prejudice by an order made in the absence of the defendant prosecuted for a felony, is all that need be shown to reverse a judgment of conviction, but adhere to its corollary, that we will not reverse for that cause when it is plain the defendant has lost no advantage by his absence.'' *Whittaker* v. *State,* 173 Ark. 1172, 294 S. W. 397.

It is plain from the record in this case that appellant was not in any way prejudiced, and the judgment is, therefore, affirmed.